# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Anthony Hatcher, | CV 07-1958 PHX-SMM (JM) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Dora Schriro, et al., | |
| Respondent. | |

Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus [Doc. No. 1] filed under 28 U.S.C. §2254. In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation. As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, deny and dismiss the Petition with prejudice.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

By indictment dated September 17, 2003, Petitioner was charged in Maricopa County with six counts of armed robbery, all class 2 dangerous felonies; seven counts of kidnaping, all class 2 dangerous felonies; and one count of unlawful flight from a law enforcement vehicle, a class 5 felony. (Ex. A.) The State further alleged that Petitioner committed the offenses with two historical prior felony convictions, and that Petitioner committed the offenses while on release. (Ex. B.)

On March 16, 2004, Petitioner entered into a plea agreement that provided he would plead guilty to one count of armed robbery and one count of kidnaping, both class 2

dangerous felonies, based on the armed robbery of a credit union. (Exs. C & D.) Petitioner's counsel summarized the factual basis for both counts:

> On September 8, 2003, in both counts, they took place at 2920 North 24th Avenue in Phoenix, which is Maricopa County. Located at that address is Arizona Grocers Credit Union.
>
> On that day [Petitioner] assisted others in taking property from the victim in Count I, who is Amber Taylor. The property was taken from Miss Taylor's person by the threatened use of a deadly weapon, a handgun. And she relinquished the property because of their fears of the threatened use of the handgun.
>
> As to Count III, at the same time, Melanie Garcia was restrained. She was restrained so that the commission of the felony, the armed robbery on her and others, could be accomplished.
>
> She was restrained against her will. She was also restrained with the threatened use of a handgun that was also present.
>
> [Petitioner's] role in this instance was to act as the so-called getaway driver. He provided the means for the co-defendants in this case to flee the scene.
>
> He was later chased by police. There was short flight from the police, which is actually charged in Count XIV of this incident and he was arrested immediately thereafter.

(Ex. C, pp. 6-7.) Petitioner agreed that the factual basis was true. (*Id.*, p. 7.)

Under the plea agreement, Petitioner agreed to plead guilty to Count 1 and Count 3 and the parties stipulated that he would be sentenced from 10.5 years (the presumptive term) to 16 years on each count, with the sentences to run concurrently. (Ex. E.) The remaining counts (Counts 2 and 4 through 14) of the indictment were dismissed. (*Id.*) The plea agreement also stated that Petitioner waived all motions, defenses, and objections to the judgment and sentence, and also waived his right to appeal. (*Id.*)

On May 3, 2004, before imposing its sentence, the trial court found that "there are aggravating circumstances. There are multiple victims; seven victims in this case. The crime was committed for pecuniary gain. There were accomplices involved . . . ." (Ex. F, p. 16.) The court went on to state: "I also have considered the three prior felony convictions that you have . . . ." (*Id.*, p. 17.) The court then concluded that, "Based on all that, I do find that the

aggravating circumstances outweigh the mitigating circumstances," and sentenced Petitioner to 12 ½ years imprisonment on Counts 1 and 3, with the sentences to run concurrently. (*Id*., p. 18; Ex. G.) Finally, the court ordered, as stipulated in the plea agreement, that the remaining counts be dismissed. (Ex. F, p. 19.)

Petitioner subsequently, on July 27, 2004, filed a notice of post-conviction relief. (Ex. H.) In the petition, which was filed on February 4, 2005, Petitioner claimed that the trial court's consideration of aggravating factors unconstitutionally increased the statutory maximum range for Petitioner's sentences in violation of *Blakely v. Washington*, 542 U.S. 296 (2004). (Ex. I.) On April 26, 2005, the trial court addressed Petitioner's claim and rejected it for lack of merit, stating that the trial courts' finding of multiple victims was based upon Petitioner's plea to two separate counts involving two separate victims, which was implicit in Petitioner's plea agreement. (Ex. J.) The court also stated that Petitioner admitted in his factual basis for the plea that he committed the crimes with accomplices by agreeing that "[h]e was the getaway driver for his co-defendants who were inside the credit union with guns and masks putting the victims on the floor." (*Id*.) After finding that the Petitioner had admitted to the "accomplice aggravator and the multiple victim aggravator," the court concluded that "both may be considered by the Court as well as all other aggravating circumstances." (*Id*.)

Petitioner filed a petition for review by the Arizona Court of Appeals, which was denied without comment on February 17, 2006. (Ex. K & L.) Petitioner then sought review by the Arizona Supreme Court, which was denied on July 7, 2006. (Ex. M.)

The instant petition was filed on July 4, 2007.[1] (Doc. No. 1.) As he did in his petition for post-conviction relief, Petitioner alleges that he never waived his right to have a jury find

---

[1] As Respondents indicate in footnote 2 of the Answer, the petition is dated July 4, 2007, but it was not received and filed by the Court until October 11, 2007. (Doc. No. 1, p. 9.) After investigation, however, Respondents were unable to obtain documentation establishing when Petitioner actually mailed the petition to the Court. As such, they do not challenge the timeliness of the petition.

3

the aggravating circumstances that could be used to aggravate his sentence, and that the trial court's finding of these aggravating circumstances violated his rights under the Sixth and Fourteenth Amendments. (*Id.* at 5.)

## II. **LEGAL DISCUSSION**

Under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). *See Williams v. Taylor*, 120 S.Ct. 1495 (2000). A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000). In determining whether a state court decision is contrary to federal law, the court must examine the last reasoned decision of a state court and the basis of the state court's judgment. *Packer v. Hill*, 277 F.3d 1092, 1101 (9th Cir. 2002). A state court's decision can be an unreasonable application of federal law either (1) if it correctly identifies the governing legal principle but applies it to a new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

Petitioner relies on *Blakely v. Washington* and alleges that he never waived his right to have a jury find the aggravating circumstances that could be used to aggravate his sentence, and that the trial court's finding of these aggravating circumstances violated his rights under the Sixth and Fourteenth Amendments. Respondents contend that Petitioner's claim is procedurally barred by his guilty plea, that the trial court did not misapply *Blakely*, and that, even if it did, the error was harmless.

In deciding *Blakely,* the Supreme Court made it clear that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 301 (*citing Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)); *United States v. Thomas*, 447 F.3d 1191, 1200 (9th Cir. 2006). The Court explained in *Blakely* that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 U.S. at 303 (citations omitted).

The trial court's ruling on the Petitioner post-conviction petition is the only reasoned decision addressing Petitioner's *Blakely* claim. In finding that the use of aggravating factors (that the crime was committed with accomplices and against multiple victims) to enhance Petitioner's sentence did not violate *Blakely*, the trial court indicated that:

> In [Petitioner's] case the Court found there were multiple victims. This was based upon Defendant's plea to two separate counts involving two separate victims. This finding was implicit in [Petitioner's] plea agreement. In addition, [Petitioner] admitted in his factual basis that he committed the crimes with accomplices. He was the getaway driver for his co-defendants who were inside the credit union with guns and masks putting the victims on the floor.
>
> Pursuant to *State v. Martinez*, 209 Ariz. 280, 100 P.3d 30 (App. 2004), the finding of one aggravating factor opens the sentencing range to the full range set by law and also allows the Court to consider all aggravating factors. Since [Petitioner] admitted to the accomplice aggavator and the multiple victim aggravator was implicit in [Petitioner's] plea, both may be considered by the Court as well as all other aggravating circumstances.

(Ex. J.)

Petitioner did not file a reply and had offered no basis for finding that the trial court's treatment of his *Blakely* claim was contrary to, or an unreasonable application of *Blakely*, or that it was based on an unreasonable determination of the facts. As block quoted in the background section above, the factual basis to which Petitioner assented set forth the identities of two victims and described Petitioner's participation in the crimes with his two

5

accomplices. Based on these admissions, the trial court, as it reasoned in its order denying post-conviction relief, was permitted to rely on the aggravating factors of multiple victims and accomplice participation with violating *Blakely*.

Even if the trial court did error, it was harmless. *See Washington v. Recueno*, 548 U.S. 212, 221-222 (2006) (holding that *Blakely* error in failing to submit a sentencing factor to a jury is subject to harmless error). In addition to the admissions of multiple victims and to the participation of accomplices, Petitioner also did not object at sentencing when his counsel stated that he was "aware of the record in this case," and proceeded to address the issue of Petitioner's prior convictions, stating that "The State and the probation officer, quite frankly, rightfully so, make some note of the fact that [Petitioner] has two prior felony convictions; one of which was an aggravated assault case." (Ex. F, p. 6.) Later in the hearing, the trial court judge states that he "considered the three prior felony convictions . . . ." (*Id*., p. 18.) Petitioner also avowed in the Plea Agreement that he "has no more than two prior felony convictions in any jurisdiction." (Ex. E, p. 1.) Considering these facts, and that prior convictions are *Blakely* exempt, it is beyond a reasonable doubt that without any purported error, the result in this case would have been the same. *See Neder v. United States*, 527 U.S. 1 (1999). The trial court simply could have relied on Petitioner's prior convictions, which Petitioner does not dispute, and no doubt would have reached the same sentencing conclusion as it did.

## IV. RECOMMENDATION

Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the District Court, after its independent review, **deny and dismiss with prejudice** Petitioner's Petition for Writ of Habeas Corpus [Docket No. 1].

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

|   |   |
|---|---|
| 1 | However, the parties shall have ten (10) days from the date of service of a copy of this |
| 2 | recommendation within which to file specific written objections with the District Court. *See* |
| 3 | 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. |
| 4 | Thereafter, the parties have ten (10) days within which to file a response to the objections. |
| 5 | If any objections are filed, this action should be designated case number: **CV 07-1958-PHX-** |
| 6 | **SMM**.  Failure to timely file objections to any factual or legal determination of the |
| 7 | Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of |
| 8 | the issues. *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*). |
| 9 | DATED this 8th day of October, 2009. |

*[Signature]*
Jacqueline Marshall
United States Magistrate Judge